# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 06-CR-0636-H |
|---|---|
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF DEFENDANT'S IN LIMINE MOTION TO SUPPRESS EVIDENCE |
| vs. | |
| MODESTO DELGADO, | |
| Defendant. | |

On August 25, 2006, a jury in the above captioned case found Defendant Modesto Delgado ("Defendant") guilty of count two, possession of cocaine with the intent to distribute, in violation of section 841(a)(1) of Title 21 of the United States Code. On October 23, 2006, Defendant filed a motion for new trial. (Doc. No. 46.) The caption of the memorandum of points and authorities referenced a motion for reconsideration of defendant's in limine motion to suppress evidence,[1] but the text did not substantively address the motion to suppress evidence. The government filed an

---

[1] On Thursday, August 17, 2006, defense counsel filed an application for order shortening time to file Defendant's motion in limine to suppress evidence, together with the motion to suppress evidence and a declaration of her client. (Doc. Nos. 29-32.) The Court granted the order, and filed the Defendant's motion and government's opposition on August 21, 2006. (Doc. No. 29.) The Court rescheduled the motion in limine hearing until August 22, 2006, and the trial until August 23, 2006. (Doc. No. 35.) On August 22, 2006, following an evidentiary hearing, the Court denied Defendant's motion to suppress evidence. (Doc. No. 36.)

opposition to the motion for new trial on November 6, 2006, that did not address reconsideration of the motion to suppress evidence. (Doc. No. 50.) On November 7, 2006, the Court ordered that either party could submit a brief regarding reconsideration of the motion to suppress evidence on or before December 4, 2006. (Doc. No. 55.) The Court asked both counsel whether they intended to file any additional briefing regarding the motion to suppress during a hearing on January 5, 2007. Both counsel indicated that they would not file any additional briefing, but rather relied on their previously submitted papers. For the following reasons, the Court **DENIES** Defendant's motion for reconsideration of the order denying defendant's motion to suppress evidence.

## I. Motion To Suppress Evidence

On November 10, 2004, Defendant Modesto Delgado, the owner of a tractor-trailer truck, and his brother Cesar Delgado, were traveling eastward on Interstate 44 in Green County, Missouri, when Missouri State Commercial Vehicle Enforcement Office Jerrold Brooks asked the driver, Cesar Delgado, to stop for an administrative commercial vehicle inspection. Significantly, the driver of the truck did not have a valid driver's license. (R.T. 26.) Additionally, the driver's log book failed to contain all of the required information, (R.T. 23-24), and did not conform to the information in Defendant's log book, (R.T. 24), while Defendant's log book was inconsistent with the explanations the Officer received regarding the driving times. (R.T. 30, I-112-115.) Under the totality of the circumstances, Officer Brooks radioed Missouri Highway Patrol Sergeant Jack McMullin to assist him. (R.T. 32.) Upon arriving, Sergeant McMullin asked Defendant for permission to search the truck. After Defendant consented to allow Sergeant McMullin to search the truck, Sergeant McMullin found approximately 41.99 kilograms (92.57 pounds) of cocaine within the truck.

### A. The Stop Of The Truck And Brief Detention Of Defendant Did Not Violate The Fourth Amendment

Under the Fourth Amendment of the U.S. Constitution, the people are to be

secure in their persons, houses, papers, and effects against unreasonable searches and seizures, and no warrants shall issue, but upon probable cause. Ordinarily "[a] search or seizure is unreasonable in the absence of individualized suspicion of wrongdoing." City of Indianapolis v. Edmond, 531 U.S. 32, 37 (2000). One exception to this rule, however, is an administrative search, which is allowed without particularized suspicion, provided the search is appropriately limited. See id. Additionally, once an officer has reasonable suspicion that criminal activity is afoot, the officer may briefly detain and question an individual without violating the Fourth Amendment. See United States v. Robertson, 833 F.2d 777, 780 (9th Cir. 1987).

### 1. Officer Brooks' Administrative Stop Of The Truck Was Authorized By Section 304.230.4 Of The Missouri Revised Statutes

Missouri Revised Statute section 304.230.4(2) authorizes Missouri commercial vehicle enforcement officers to "require the operator of any commercial vehicle to stop and submit to a vehicle and driver inspection to determine compliance with commercial vehicle laws, rules, and regulations . . . ." The Supreme Court of Missouri has interpreted a similar subsection of this statute, section 304.230.2,[2] to allow Missouri highway patrolmen to stop any vehicle covered by the statute, even in the absence of any probable cause or reasonable suspicion of a violation. See State v. Villa-Perez, 835 S.W.2d 897, 899, 902 (Mo. 1992). When similar terms are used within the same statute, they should receive the same meaning. See Firestone v. Howerton, 671 F.2d 317, 320 & n.6 (9th Cir. 1982). Therefore, section 304.230.4 similarly authorizes administrative stops of commercial vehicles in the absence of any probable cause or reasonable suspicion of a violation.

The Villa-Perez court upheld the trial court's ruling that the officer's

---

[2] Section 304.230.2 authorizes "any peace officer or any highway patrol officer to stop any . . . vehicle" subject to weight limits "upon the public highways for the purpose of determining whether such vehicle is loaded in excess of the provisions of sections 304.170 to 304.230" of the Missouri Revised Statutes.

administrative stop of a commercial vehicle under the authority granted by section 304.230.2 was a valid, non-pretextual, stop after crediting the officer's testimony that he often stopped commercial vehicles to check for compliance and he stopped the truck only to inspect it for purposes of § 304.230.2.  See Villa-Perez, 835 S.W.2d at 902; cf. Whren v. United States, 517 U.S. 806, 811-12 (1996) (indicating that an administrative stop is invalidated if it is used as a pretext to search for evidence of crimes other than those covered by the administrative regulation).  Officer Brooks credibly testified to similar facts during the in limine hearing.  (R.T. 8-10.)  Therefore, Officer Brooks stop was non-pretextual and authorized under Missouri law.  (R.T. 263.)

### 2. The Administrative Search And Brief Detention Based On Reasonable Suspicion Did Not Violate The Fourth Amendment

Under the Fourth Amendment, certain legislative schemes authorizing warrantless administrative searches do not violate the Fourth Amendment.  See Donovan v. Dewey, 452 U.S. 594, 598 (1981).  Whether a regulatory scheme that includes warrantless inspections is reasonable under the Fourth Amendment is determined on a case-by-case basis.  See United States v. Kaiyo Maru No. 53, 699 F.2d 989, 995 (9th Cir. 1983) (citing Marshall v. Barlow's, Inc., 436 U.S. at 307, 321 (1978)).  Reasonableness depends on the specific enforcement needs and privacy guarantees of each statute.  See id.

Administrative searches and seizures on commercial property used in "closely regulated" industries are constitutionally permissible.  See United States v. Argent Chemical Laboratories, Inc., 93 F.3d 572, 575 (9th Cir. 1996).  "Persons engaging in pervasively regulated industries have a diminished expectation of privacy."  Id. (citing New York v. Burger, 482 U.S. 691, 702 (1987)).  An administrative search or seizure made pursuant to a statute authorizing such searches and seizures will be deemed reasonable for Fourth Amendment purposes only if the business is closely regulated

and if three Burger criteria are met:

> First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made.
>
> Second, the warrantless inspections must be "necessary to further [the] regulatory scheme."
>
> Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant."

Argent Chemical Laboratories, Inc., 93 F.3d at 575 & n.1 (citing Burger, 482 U.S. at 702-03).

The circuits that have addressed the issue have indicated that commercial trucking is a closely regulated industry for purposes of allowing federal and state legislatures to enact statutes allowing administrative searches of commercial trucks. See United States v. Mendoza-Gonzalez, 363 F.3d 788, 794 (8th Cir. 2004); United States v. Vasquez-Castillo, 258 F.3d 1207, 1210 (10th Cir. 2001); United States v. Fort, 248 F.3d 475, 480-82 (5th Cir. 2001); United States v. Dominguez-Prieto, 923 F.2d 464, 468-70 (6th Cir. 1991). (R.T. 263.) This Court also notes that federal law requires commercial carriers to adhere to a wide variety of safety related rules and regulations, including maintenance of log books and shipping manifests, as well as a wide variety of emergency safety equipment. (R.T. 262.) Additionally, the Ninth Circuit has held that federal regulations calling for random, biennial, preemployment and postaccident testing of urine samples of commercial truck drivers, without warrants or individualized suspicion of drug use, do not violate the truck drivers' Fourth Amendment freedom from search and seizure. See International Broth. of Teamsters, Chauffeurs, Western Conference of Teamsters v. Department of Transp., 932 F.2d 1292, 1309 (9th Cir. 1991). Therefore, commercial trucking is a closely regulated industry justifying administrative inspections.

Furthermore, administrative searches performed under section 304.230.4 of the

Missouri Revised Statutes do not violate the Fourth Amendment because the statute satisfies all three Burger criteria.  First, there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made.  The Ninth Circuit has indicated that "[g]iven the enormous size of commercial trucks, relative to other vehicles on the road, a single mistake in judgment or momentary lapse in attention can have devastating consequences for other travelers."  International Broth. of Teamsters, 932 F.2d at 1304.  The Missouri Supreme Court has similarly stated that the state has a substantial interest in allowing the administrative inspections of commercial vehicles authorized by section 304.230.1 of the Missouri Revised Statutes.  See State v. Rodriguez, 877 S.W.2d 106, 109 (Mo. 1994) ("The state's interest in stopping, weighing and inspecting vehicles is the product of concern for the safety of those traveling a state's highways . . . .  These are legitimate governmental concerns that are worthy of significant weight in a Fourth Amendment analysis.").  Therefore, Missouri has a substantial interest in allowing its commercial vehicle enforcement officers to perform administrative searches of commercial vehicles.

Second, the vehicle inspections are necessary to further the regulatory scheme. Several circuits have concluded that administrative searches of commercial carriers are necessary to further an effective regulatory scheme for commercial vehicles.  See United States v. Maldonado, 356 F.3d 130, 135 (1st Cir. 2004); United States v. Vasquez-Castillo, 258 F.3d 1207, 1211 (10th Cir. 2001); United States v. Fort, 248 F.3d 475, 481 (5th Cir. 2001); United States v. Dominguez-Prieto, 923 F.2d 464, 469 (6th Cir. 1991).  As the Maldonado court pointed out, "[b]ecause the industry is so mobile, surprise is an important component of an efficacious inspection regime."  See Maldonado, 356 F.3d at 135 (citing United States v. Biswell, 406 U.S. 311, 316 (1972)). Further, "the factors justifying the warrantless inspections of commercial carriers are more compelling than those present in Burger because commercial carriers, unlike the automobile junkyards considered in Burger, pass quickly through states and out of the jurisdiction of the enforcement agencies."  Vasquez-Castillo, 258 F.3d at 1211.  The

1  mobility of the commercial trucks equally necessitate the use of administrative searches
2  to further the state's regulatory program.

3        Finally, the regulatory scheme also satisfies the third <u>Burger</u> requirement.  The
4  factors considered by the Ninth Circuit in upholding a statute permitting the Coast Guard
5  to perform administrative searches of fishing boats supports this conclusion.  See <u>Kaiyo</u>
6  <u>Maru No. 53</u>, 699 F.2d at 996-97.  Similar to that statute, the Missouri statute limits the
7  ability to perform administrative searches of commercial vehicles to a restricted class of
8  officials, <u>see</u> Mo. Rev. Stat. § 304.230.4, limits the class of vehicles allowed to be
9  administratively searched, <u>see</u> <u>id.</u>, and permits administrative searches to be performed
10 in a pervasively regulated industry, such that commercial drivers may expect that they
11 will be subject to administrative inspections from time to time.  See  <u>Rodriguez</u>, 877
12 S.W.2d at 108 (noting that the records and vehicles of commercial drivers are subject to
13 frequent checkpoint and roving inspections seeking to ensure their compliance with state
14 and federal law).  Additionally, administrative searches under the Missouri statute are
15 properly limited under the law.  Under the circumstances, the administrative search of
16 Defendant's truck did not violate the Fourth Amendment.

17       During the course of his administrative search, Officer Brooks discovered that the
18 occupants of the truck had violated numerous laws.  Significantly, the driver of the truck,
19 Cesar Delgado, did not have a valid driver's license.  (R.T. 26.)  Additionally, Cesar
20 Delgado's log book failed to contain the required information in violation of sections
21  307.400 and 558.011.1(5) of the Missouri Revised Statutes, (R.T. 23-24), and did not
22 conform to the information in Defendant's log book.  (R.T. 24.)  These were not minor
23 violations in the Court's view, because they pertain to the safety of the other drivers on
24 the highway.  (R.T. 263-64.)  Also, Defendant's and Cesar Delgado's explanations
25 regarding the location that Cesar Delgado boarded the truck contradicted the information
26 in Defendant's log book.  (R.T. 30, I-112-115.)  The totality of these factors sufficed to
27 raise reasonable suspicion in Officer Brooks' mind that additional criminal activity was
28 afoot, justifying the assistance of Sergeant McMullin.  See <u>Robertson</u>, 833 F.2d at 780.

_

(R.T. 264.)

After Officer Brooks requested Sergeant McMullin's assistance, but before the patrolman arrived, Officer Brooks continued his administrative inspection by asking to see required safety equipment. (R.T. 69.) After the driver had difficulty opening a side compartment containing the safety equipment from outside of the truck, Officer Brooks, standing just outside the driver's door, asked Defendant to obtain the equipment from inside the truck. (R.T. 36-37.) Defendant responded by stepping across the truck and closing the driver's door. (R.T. 37.) Defendant then opened the side compartment from inside the truck, allowing Officer Brooks to examine the safety equipment inside the side compartment from outside the truck. (R.T. 38-39.) While Officer Brooks was inspecting the equipment, Defendant covered up the access from the compartment to the tractor by slamming a bunk back into place. (R.T. 39.) These behaviors seemed suspicious to Officer Brooks because in his experience there was no need to close the driver's door in order to access the side compartment from inside the tractor, and because drivers often show him safety equipment stored in the side compartment from inside the tractor. (R.T. 37-40, I-123.)

Prior to Officer Brooks' completion of the administrative inspection, Sergeant McMullin arrived. (R.T. 33, 40.) Immediately upon arrival, Officer Brooks informed Sergeant McMullin that Cesar Delgado had violated laws regarding the maintenance of appropriate log books, that he was driving with an invalid license, that Defendant's and Cesar Delgado's explanations regarding the location that Cesar Delgado boarded the truck contradicted the information in Defendant's log book, and that Defendant had behaved suspiciously with regard to the inspection of the safety equipment. (R.T. 40, 84-85, I-128, I-202.) It is a jailable offense not to have accurate log books. See Mo. Rev. Stat. §§ 307.400, 558.011.1(5). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

In addition to probable cause that the log books were inaccurate, Sergeant McMullin had reasonable suspicion that Defendant and Carlos Delgado were violating other laws based on the totality of the factors. (R.T. 264.) If an officer has reasonable suspicion that criminal activity is afoot, he is justified in briefly detaining and questioning an individual. See Robertson, 833 F.2d at 780. Therefore, Sergeant McMullin's brief detention did not violate Defendant's Fourth Amendment rights.

### B. The Consensual Search Of Defendant's Truck Did Not Violate The Fourth Amendment

During the brief detention, Sergeant McMullin asked for and received the consent of Defendant to search the truck. (R.T. 87-89.) After an evidentiary hearing, the Court concluded that Defendant voluntarily consented to the search of the truck. (R.T. 264-65.) Such voluntary consent obviates the need for a warrant, and therefore the search of the truck, and the use at trial of the cocaine found during the search of the truck, did not violate Defendant's Fourth Amendment rights. See Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973); United States v. Al-Azzawy, 784 F.2d 890, 895 (9th Cir. 1985).

### D. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion for reconsideration of defendant's in limine motion to suppress evidence.

IT IS SO ORDERED.

DATED: January 5, 2007

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

1  COPIES TO:
   Mary Frances Prevost
2  Law Offices of Mary F Prevost
   555 West Beech Street
3  Suite 500
   San Diego, CA 92103
4
   Orlando B Gutierrez
5  U S Attorneys Office Southern District of California
   Criminal Division
6  880 Front Street
   Room 6293
7  San Diego, CA 92101